IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

HELEN GARRARD, WILLIAM G. ELLIOTT,
BETHANY B. ELLIOTT, WILLIAM PENN,
SANDRA PENN, MICHAEL HYNEMAN,
and JOSEPH LEE                                                                               PLAINTIFFS

V.                                                                    CIVIL ACTION NO. 3:04CV76-B-A

THE CITY OF GRENADA, MISSISSIPPI,
and LEWIS JOHNSON, J.B. FLOWERS,
CALVIN NEELY, ERNEST HARGROVE,
BILLY COLLINS, MARY DUNCAN HALL,
and RONALD MERRIMAN, Individually                                                   DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon the *ore tenus* motion of the plaintiffs for clarification of the court's July 6, 2005, order granting summary judgment in favor of the plaintiffs. Upon due consideration, the court is ready to rule.

Factual and Procedural Background

The plaintiffs, voters residing in various wards within the City of Grenada, Mississippi, brought this action alleging that the City violated the Constitution's "one person, one vote" principle by refusing to re-evaluate population deviations within the City's ward scheme in light of the 2000 decennial census figures, and in light of a 1993 annexation, and in failing for over ten years to propose a redistricting plan to the United States Department of Justice that would pass constitutional muster and receive preclearance under Section 5 of the Voting Rights Act. 42 U.S.C. §1973c. This court on July 6, 2005, ordered the City to submit a plan for preclearance to the Department of Justice, and as a result, a plan has now been precleared.

The City of Grenada is a special charter municipality and is governed by a mayor and seven-member city council. The City annexed certain areas in 1993, and the annexation was subsequently approved by the chancery court in 1995 and affirmed without opinion by the Mississippi Supreme Court the following year. *See In the Matter of the Extension of the Boundaries of the City of Grenada, Mississippi*, 669 So. 2d 85 (Miss. 1996).

Because the annexation impacted the City's voter rolls and resulted in redistricting of the seven city wards, the City sought Section 5 preclearance of the changes by submitting the annexation to the Department of Justice. The Attorney General objected to the annexation in August 1998, finding that it had both a discriminatory purpose and effect. In January 2000, the City resubmitted the 1993 annexation ordinance with a revised redistricting ward plan. The Attorney General subsequently found that, while the second proposal no longer had a retrogressive effect, it maintained a discriminatory purpose. In an attempt to remedy the Attorney General's objection, the City adopted a new ordinance in February 2001 which provided for deannexation of five separate and non-contiguous parcels of land from the corporate limits of Grenada. The deannexation would remove 1285 persons from the city limits – 1160 white and 125 non-white. Grenada citizens filed an objection alleging that the deannexation was not supported by adequate evidence and constituted "a patent racial gerrymander."

On July 24, 2002, the Grenada County Chancery Court found that the proposed deannexation was unreasonable. The matter was appealed to the Mississippi Supreme Court which found likewise. *See Grenada v. Marascalco*, 876 So. 2d 995, 998 (Miss. 2004). On June 28, 2005, after the City submitted a plan as a result of this court's order of July 6, 2005, the annexation received the requisite Section 5 preclearance.

The plaintiffs filed a motion for temporary restraining order and preliminary injunction on April 28, 2004, immediately prior to the City's 2004 mayoral and city council elections. The judge who heard the motion for temporary restraining order denied the motion because of its eleventh hour filing and because there was no likelihood of irreparable harm. This case was later assigned to the below-named judge. The plaintiffs' petition sought an order compelling the City to develop a redistricting plan that would include all areas lying within Grenada's post-annexation corporate limits and to hold special interim elections. The plaintiffs moved for summary judgment, and this court granted the motion.

In granting summary judgment, the court ordered the City to submit a redistricting plan to the U.S. Justice Department and to hold special interim elections. The City complied by adopting a redistricting plan for the post-annexation city on July 28, 2005, and submitting it to the Justice Department for preclearance. This plan received preclearance in a remarkably speedy manner. On August 11, 2005, the Justice Department informed the City that the Attorney General does not interpose any objection to the 2005 redistricting plan or "special election procedures."

Analysis

The uncontradicted facts herein show that the present officeholders were elected by elections that violated the constitutional provisions of the "one person, one vote" requirements as set forth by *Baker v. Carr*, 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); and also by withholding the franchise rights of approximately 1285 citizens in the annexed area for over ten

years, all the while taxing them with the added tax burden of paying city taxes.[1] These egregious acts of omission – failing for over ten years to redistrict the annexed area in a constitutional manner – and commission – taxation without representation – are found to be unconscionable, and the city election offices are thus declared vacant for purposes of ordering a special election to fill them in a constitutional manner. *See generally*, *Reynolds v. Sims*, 377 U.S. 533, 566, 84 S. Ct. 1362, 1384 (1964).

The issue presented to the court by the parties now is what type of election will be ordered to fill the offices. The law provides that in ordering remedies such as special elections to fill vacancies in elective offices, the court must apply the most narrowly tailored remedy possible and shall not "intrude upon state policy any more than necessary." *Upham v. Seamon*, 456 U.S. 37, 41-42, 102 S. Ct. 1518, 1521 (1982) (quoting *White v. Weiser*, 412 U.S. 783, 794-95, 93 S. Ct. 2348, 2354, 37 L. Ed. 2d 335 (1973)).

The City argues that its past city general elections have been those requiring only a plurality of the votes to win; however, those elections were not to fill a vacancy in an office or offices. The salient election statute dealing with vacancies in office in the state is Section 23-15-857(2), Miss. Code Ann., which provides in pertinent part as follows:

> When it shall happen that there is any vacancy in an elective office in a city, town or village the unexpired term of which shall exceed six months, the governing authority or remainder of the governing authority of said city, town or village shall

---

[1] The court was further advised at the August 23, 2005, status hearing that the City is even now attempting to deprive the annexed voters of their voting privileges in that the City has used municipal tax dollars to employ an attorney to consider suing the Justice Department regarding its preclearance of the 1993 annexation – the theory being that the Justice Department had no authority to preclear the annexation *sua sponte*. The City thus adds insult to injury and continues to expand the egregiousness of its past wrongs in hope of possibly continuing the disenfranchisement of the 1285 annexed, city tax-paying citizens.

4

> make and enter on the minutes an order for an election to be held in such city, town or village to fill the vacancy and fix a date upon which such election shall be held.
>
> * * *
>
> The candidate receiving a majority of the votes cast in a said election shall be elected.

Having declared the offices vacant, the court finds that Mississippi law requires a "special" election to be held. As mentioned above, Miss. Code Ann. § 23-15-857 provides for a "special" election "[w]hen it shall happen that there is any vacancy in an elective office in a city, town or village the unexpired term of which shall exceed six months . . . ." Under this section, "[t]he candidate receiving a majority of the votes cast in a said election shall be elected." If no candidate receives a majority vote, a run-off procedure outlined by the statute will be utilized.

The court finds the special election procedure to be the most remedially appropriate for a number of reasons. First, as noted by the plaintiffs, Mississippi public policy as reflected in the statutory code presumes, and common sense dictates, that the "special" election procedure applies to any election which occurs outside the "general" election cycle. Second, because the present city officials were elected under constitutionally infirm conditions, it naturally follows that those offices must be declared vacant; and once the offices are vacant, the Mississippi Code clearly requires a "special" election to fill the vacancies. Such is Mississippi's policy, and a district court "must interfere with state policy only to the extent necessary to remedy statutory or constitutional violations." *Watkins v. Fordice*, 701 F. Supp. 646, 648 (S.D. Miss. 1992) (citing *Upham v. Seamon*, 456 U.S. 37, 43, 102 S. Ct. 1518, 1522, 71 L. Ed. 2d 725 (1982)).

The City argues that "judicial relief decreasing [sic] special interim election procedures becomes appropriate only when a legislative entity fails to respond to federal constitutional prerequisites." *Reynolds v. Sims*, 377 U.S. 533, 586, 84 S. Ct. 1362, 1394 (1964). However,

such a circumstance is precisely the situation presented in the case at bar. "Judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Reynolds*, 377 U.S. at 586. The City has not simply been untimely in complying with federal constitutional requisites; it has purposefully and intentionally delayed the redistricting matter and has previously refused to include the annexed citizenry in the proposed plan. Further, the City's opportunities to comply have been far more than adequate.

The court is also unpersuaded by the City's argument that the general election procedure must be utilized because it has already been precleared by the Attorney General. As the Justice Department representative noted in his letter to the City's counsel, "the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the changes." The plaintiffs in this ongoing litigation are entitled to object to the City's plan, including the proposed election procedure, and they have done so. The plaintiffs have moved for clarification of the court's previous order and have argued that a special election in accordance with Section 23-15-857, Miss. Code Ann., applicable to vacancies in office, should be held.

Finally, it came to light at the August 23, 2005, status hearing that neither side objects to an extension of the election date. The general election was scheduled for October 4, 2005. In accord with this opinion, the general election will not be held. The court finds an extension appropriate for the special election, and it shall not be held prior to November 1, 2005.

Conclusion

For the foregoing reasons, the court finds that the City shall hold a "special" election in accordance with Miss. Code Ann. § 23-15-857 to fill the vacant offices of its city council

6

members and mayor.  The court further finds that the election should be postponed beyond the original date of October 4, 2005.  A "special" election for these offices shall be held no earlier than November 1, 2005.  A separate order in accord with this opinion shall issue this day.

This, the 7th day of September, 2005.

/s/ Neal Biggers
_____
**NEAL B. BIGGERS, JR.
SENIOR U.S. DISTRICT JUDGE**